1   **WO**

2

3

4

5

6               **IN THE UNITED STATES DISTRICT COURT**

7                    **FOR THE DISTRICT OF ARIZONA**

8

9   IN RE:  BARD IVC FILTERS PRODUCTS          MDL No. 2641
    LIABILITY LITIGATION
10

11  This Order Relates to:

12  Bianca Fraser-Johnson, et al.,            No. CV-16-00336-PHX-DGC

13                          Plaintiffs,        **ORDER**

14  v.

15  C.R. Bard, Inc., et al.,

16                          Defendants.

17

18          This case was originally filed in Delaware state court, and Defendants removed it

19  to federal court.  After removal but before consolidation in this MDL, Defendants C.R.

20  Bard, Inc. and Bard Peripheral Vascular, Inc. filed a motion to sever and remand

21  Plaintiffs' claims against the nondiverse Defendants.  *See* Docs. 5, 6 in *Fraser-Johnson v.*

22  *C.R. Bard, Inc.*, No. 2:16-cv-00336-DGC (D. Del. Oct. 29, 2015).[1]  That motion is fully

23  briefed.  *See* D. Del. Docs. 10; 11; 13.  After transfer to this Court, Plaintiffs filed a

24  motion to remand.  Doc. 1077.  That motion is fully briefed.  Docs. 1217; 1354.

25  Plaintiffs' request for oral argument is denied because it will not aid in the Court's

26  decision.  *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir.

27  _____

28          [1] To avoid confusion, documents filed in the District of Delaware case after
    removal but before consolidation in this MDL will be cited as "D. Del. Doc.," and
    documents filed in MDL No. 2641 will be cited as "Doc."

1998).  For the following reasons, the Court will grant Plaintiffs' motion to remand.

**I.    Background.**

The allegations of Plaintiffs' complaint are taken as true for purposes of this motion.  Plaintiffs Bianca Fraser-Johnson and Michael Johnson are a married couple who reside in Delaware.  Doc. 1077-1 at 2, ¶ 1.  Defendant C.R. Bard, Inc. is a corporation organized under the laws of New Jersey with its principal place of business in New Jersey.  *Id.* at ¶ 2.  Defendant Bard Peripheral Vascular, Inc. is an Arizona corporation and a wholly-owned subsidiary of C.R. Bard, Inc., with a principal place of business in Arizona.  *Id.* at 3, ¶ 4.  Defendants Christiana Care Health Services, Inc. and Christiana Health System, Inc. (collectively "Christiana Care") are Delaware corporations that owned, operated, managed, or controlled hospital facilities in Delaware.  *Id.* at 3-4, ¶¶ 8-10.  Defendant Thomas Bauer, M.D. is a physician who specializes in thoracic surgery and is licensed to practice medicine in Delaware.  *Id.* at 4, ¶ 12.  Defendant Cynthia Heldt, M.D. is a physician who specializes in internal medicine and is licensed to practice medicine in Delaware.  *Id.* at ¶ 15.  Dr. Bauer and Dr. Heldt were employed or affiliated with Christiana Care.  *Id.* at ¶¶ 13, 16.   Plaintiff Bianca Fraser-Johnson ("Fraser-Johnson") was a patient of Christiana Care, Dr. Bauer, and Dr. Heldt.  *Id.* at 5, ¶ 18.

On July 5, 2005, Fraser-Johnson had a Bard Filter ("Filter") implanted in her at the University of Pennsylvania Hospital in Philadelphia, Pennsylvania.  *Id.* at ¶ 19.  In July of 2013, Fraser-Johnson reported significant chest pain to Dr. Bauer.  *Id.* at ¶ 20.   On July 10, 2013, Dr. Bauer surgically removed a 4.5 centimeter wire from Fraser-Johnson's chest at one of Christiana Care's facilities in Delaware.  *Id.*  Neither Dr. Bauer nor Dr. Heldt determined the source of the wire removed from Fraser-Johnson's body.  *Id.* at ¶¶ 21-22.   In April or May of 2015, Fraser-Johnson reported significant chest pain to Dr. Heldt.  *Id.* at ¶ 23.  Dr. Heldt advised Fraser-Johnson that she should be evaluated by an interventional radiologist at once.  *Id.*  Consultation with the radiologist revealed that the Bard Filter had fractured, causing portions of it to migrate.  *Id.* at ¶ 24.  Fraser-Johnson underwent surgeries on June 4 and 9, 2015 to remove the Filter and related debris from

1   her body.  *Id.*

2      On September 23, 2015, Plaintiffs filed this action against Defendants in

3   Delaware's New Castle County Superior Court.  *See id.* at 2.  On October 23, 2015,

4   Defendants C.R. Bard, Inc. and Bard Peripheral Vascular, Inc. (collectively "Bard")

5   removed the case to federal court in the District of Delaware.  *See* D. Del. Doc. 1.  On

6   October 29, 2015, Bard requested an order severing Plaintiffs' claims against it from

7   claims against the nondiverse Defendants, and remanding the claims against the

8   nondiverse Defendants to Delaware state court.  *See* D. Del. Docs. 5; 6.  On February 4,

9   2016, the United States Judicial Panel on Multidistrict Litigation transferred Plaintiffs'

10  case from the District of Delaware to this Court for inclusion in this MDL.  *See*

11  Doc. 562.[2]  On March 12, 2016, Plaintiffs' filed their motion to remand the case to

12  Delaware state court.  *See* Doc. 1077.

13  **II.   Legal Standard.**

14     A civil case brought in state court may be removed to the federal court in the

15  district where the action is pending if the federal district court would have had original

16  jurisdiction.  28 U.S.C. § 1441(a).  Removal based on diversity jurisdiction is not proper

17  if diversity is lacking or "if any of the parties in interest properly joined and served as

18  defendants is a citizen of the State in which such action is brought," 28 U.S.C.

19  § 1441(b)(2), but the fraudulent joinder of non-diverse defendants will not defeat removal

20  on diversity grounds, *In re Briscoe*, 448 F.3d 201, 215-16 (3d Cir. 2006).[3]  Section 1441

21  is to be strictly construed against removal.  *See Syngenta Crop Protection, Inc. v.*

22  *Henson*, 537 U.S. 28, 32 (2002); *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100,

23  108-09 (1941).  A "removing party carries a heavy burden of persuasion in making this

24

25     [2] Prior to the transfer order, Plaintiffs made the same arguments to the Panel that they make in their motion to remand.  *See* Doc. 562 at 1.  The Panel transferred the case for inclusion in the MDL without precluding Plaintiffs from making the arguments to this Court.  *See id.*

26

27     [3] Because an MDL transferee court applies the substantive law of the transferor forum, the Court applies the fraudulent misjoinder case law of the District of Delaware. *In re Zicam Cold Remedy Mktg., Sales Practices, & Prods. Liab. Litig.*, 797 F. Supp. 2d. 940, 941 (D. Ariz. 2011) (citing *Ferens v. John Deere Co.*, 494 U.S. 516, 525 (1990)).

28

1  showing" because "removal statutes are to be strictly construed against removal and all

2  doubts should be resolved in favor of remand." *Batoff v. State Farm Ins. Co.*, 977 F.2d

3  848, 851 (3d Cir. 1992) (internal citations and quotation marks omitted); *see* 28 U.S.C.

4  § 1447(c).

5  **III.    Analysis.**

6        **A.    Plaintiffs' Motion to Remand.**

7        Plaintiffs argue that remand to Delaware state court is appropriate because: (1) the

8  nondiverse Defendants were not fraudulently misjoined; (2) complete diversity is lacking;

9  (3) severance of the nondiverse Defendants is inappropriate; and (4) it promotes public

10 policy.  Plaintiff seeks to recover attorneys' fees should the Court conclude that Bard's

11 removal was improper.

12              **1.    Fraudulent Joinder.**

13       The doctrine of fraudulent joinder provides a helpful reference point for

14 understanding the doctrine of fraudulent misjoinder.[4]  It is well-settled that "[f]ederal

15 courts may and should take such action as will defeat attempts to wrongfully deprive

16 parties entitled to sue in the [f]ederal courts of the protection of their rights in those

17 tribunals." *Ala. Great S. Ry. Co. v. Thompson*, 200 U.S. 206, 218 (1906).  Fraudulent

18 joinder and fraudulent misjoinder have been developed to carry out this mandate.

19       In the Third Circuit, a "removing defendant may avoid remand only by

20 demonstrating that the non-diverse party was fraudulently joined." *Batoff*, 977 F.2d at

21 851.  "Joinder is fraudulent where there is no reasonable basis in fact or colorable ground

22 supporting the claim against the joined defendant, or no real intention in good faith to

23 prosecute the action against the defendants or seek a joint judgment." *Id.* (quotation

24 marks omitted; citing *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990);

25 ───────────────────

26       [4] In its broadest sense, the term "fraudulent joinder" encompasses three related but
   distinct concepts: (1) fraudulent joinder, (2) fraudulent misjoinder, and (3) outright fraud
27 by the plaintiff in setting out factual allegations to establish or thwart jurisdiction.  *See*
   14B Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Juris. § 3723 (4th ed.
28 2015).  Because there have been no allegations of outright fraud in this case, the third
   concept is not relevant.  Thus, to distinguish it from fraudulent misjoinder, the term
   "fraudulent joinder" will refer only to the narrower concept, and not the umbrella term.

*Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 32 (3d Cir. 1985)).  "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court."  *Boyer*, 913 F.2d at 111.  "[T]he inquiry into the validity of a complaint triggered by a motion to dismiss under Rule 12(b)(6) is more searching than that permissible when a party makes a claim of fraudulent joinder."  *Batoff*, 977 F.2d at 852.  Thus, the standard is whether a claim is "wholly insubstantial and frivolous."[5]  *Id.* Contested issues of fact and uncertainties in controlling substantive law are to be resolved in favor of the plaintiff.  *Boyer*, 913 F.2d at 111 (citations omitted).

## 2.      Fraudulent Misjoinder.

The doctrine of fraudulent misjoinder, or procedural misjoinder, was first recognized by the Eleventh Circuit in *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000).  In that case, an Alabama resident filed a class action lawsuit in Alabama state court against four defendants, one of which resided in Alabama.  The statutory and common law fraud claims in the original complaint and the first amended complaint involved only the sale of service contracts in connection with automobile sales. *Id.* at 1355.  The second amended complaint added parties as well as statutory and common law fraud claims relating to extended service contracts in the sale of retail goods by Lowe's, a resident of North Carolina.  *Id.*  Lowe's filed a notice of removal based on diversity jurisdiction and a motion to sever the retail goods class from the automobile class.  *Id.*  The federal district court granted the motion to sever and remanded the automobile class to Alabama state court.  *Id.*  Plaintiffs appealed.  *Id.* at 1355-56.

The Eleventh Circuit affirmed.  *Id.* at 1360.  The court noted that Lowe's had been joined solely through Rule 20 of the Federal Rules of Civil Procedure, which requires: "(1) a claim for relief asserting joint, several, or alternative liability and arising from the

---

[5] Courts in other circuits have defined this less searching version of the Rule 12(b)(6) test by reference to Rule 11 of the Federal Rules of Civil Procedure.  *See, e.g.*, *Davis v. Prentiss Props. Ltd., Inc.*, 66 F. Supp. 2d 1112, 1114-16 (C.D. Cal. 1999).

same transaction, occurrence, or series of transactions or occurrences, and (2) a common question of law or fact." *Id.* (citing Fed. R. Civ. P. 20(a)). The court found no allegations of joint liability or any allegation of a conspiracy between the defendants; instead, the court found two sets of claims that were wholly distinct from one another. *Id.* The court concluded that "[m]isjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action." *Id.* The court concluded that there was "no real connection" between the automobile class and the retail goods class. *Id.* The court held that "the district court did not err in finding an attempt to defeat diversity jurisdiction by fraudulent joinder." *Id.* The court qualified that "mere misjoinder" does not constitute fraudulent misjoinder; instead, it requires conduct that is "so egregious as to constitute fraudulent joinder." *Id.*

*Tapscott* has not been widely followed. Three circuits have declined to adopt the doctrine when presented with the opportunity. *See In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 622 (8th Cir. 2010) ("The Eighth Circuit Court of Appeals has not yet considered the fraudulent misjoinder doctrine. We make no judgment on the propriety of the doctrine in this case, and decline to either adopt or reject it at this time.") (citation omitted); *Lafalier v. State Farm Fire & Cas. Co.*, 391 F. App'x 732, 739 (10th Cir. 2010) (unpublished) ("There may be many good reasons to adopt procedural misjoinder . . . . But we need not decide that issue today, because the record before us does not show that adopting the doctrine would change the result in this case."); *Cal. Dump Truck Owners Ass'n v. Cummins Engine Co., Inc.*, 24 F. App'x 727, 729 (9th Cir. 2001) (unpublished) ("The Eleventh Circuit has recognized the additional theory of egregious misjoinder, where the claims of non-diverse plaintiffs have no real connection or nexus to the claims of the diverse plaintiffs. For purposes of discussion we will assume, without deciding, that this circuit would accept the doctrines of fraudulent and egregious joinder as applied to plaintiffs.") (citing *Tapscott*, 77 F.3d 1353). The Fifth Circuit has cited *Tapscott* with approval, while stopping short of fully adopting fraudulent misjoinder. *See In re Benjamin Moore & Co.*, 318 F.3d 626, 630-31 (5th Cir. 2002) ("Thus, without detracting

from the force of the *Tapscott* principle that fraudulent misjoinder of plaintiffs is no more permissible than fraudulent misjoinder of defendants to circumvent diversity jurisdiction, we do not reach its application in this case."); *see also Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 533 n.5 (5th Cir. 2006).  The remaining circuits, including the Third Circuit, have not yet addressed this issue.

District courts in the Third Circuit have come to different conclusions.[6]  *Compare In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, MDL No. 1871, 2014 WL 2011597, at *3-4 (E.D. Pa. May 15, 2014) (rejecting allegations of fraudulent misjoinder), *and  In re Plavix Prod. Liab. & Mktg. Litig.*, MDL No. 2418, 2014 WL 4544089, at *7 (D.N.J. Sept. 12, 2014) (same), *with In re Fosamax (Alendronate Sodium) Prods. Liab. Litig.*, MDL No. 2243, 2012 WL 1118780, at *4-6 (D.N.J. Apr. 3, 2012) (finding fraudulent misjoinder), *and In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*, 294 F. Supp. 2d 667, 677-79 (E.D. Pa. 2003) (same).  The Court need not decide whether the Third Circuit would recognize the doctrine of fraudulent misjoinder.  Even assuming the doctrine applies, the Court finds that the nondiverse Defendants were not fraudulently misjoined and that removal was therefore improper.

### 3.   Analysis.

In applying the doctrine of fraudulent misjoinder, the first issue is whether the federal or state standard for joinder should be used.  In some cases, a state's permissive joinder rule will be interpreted identically to Federal Rule of Civil Procedure 20, in which case the choice is not determinative.  Delaware's permissive joinder rule is modeled after the federal rule.  *Sequa Corp. v. Aetna Cas. & Sur. Co.*, No. CIV. A. 89C-AP-1, 1990 WL 123006, at *7 (Del. Super. Ct. July 13, 1990) (citing 7 Wright, Miller & Kane, Federal Practice and Procedure § 1652 (1986 ed.)); *compare* Del. R. Civ. P. 20(a), *with* Fed. R. Civ. P. 20(a).  This is consistent with Bard's assertion that the two permissive joinder rules have the same standard for defendants (*see* Doc. 1217 at 5 n.1), and

---

[6] The District of Delaware has not addressed the doctrine of fraudulent misjoinder.

Plaintiffs' assertion that the two rules are "nearly identical" (*see* Doc. 1077 at 8).  Thus, there is no indication that application of one rule over the other would affect the outcome of this case.

Nevertheless, the Court concludes that it should apply Delaware's permissive joinder rule.  Although there is no consensus on which standard to employ, the majority view appears to be that the state joinder rule should be utilized.  *See* E. Farish Percy, *Defining the Contours of the Emerging Fraudulent Misjoinder Doctrine*, 29 Harv. J.L. & Pub. Pol'y 569, 591 (2006) ("While a minority of district courts evaluate allegations of fraudulent misjoinder pursuant to the federal joinder rule, most evaluate such allegations by reference to the state joinder rule.").  This makes sense.  For purposes of fraudulent misjoinder, the Court must determine whether a diversity-defeating party was properly joined while the case resided in state court and was governed by state procedural rules.  If the party was properly joined there, complete diversity of citizenship is lacking here, and the Court cannot exercise subject matter jurisdiction.  Federal Rule of Civil Procedure 20 never applies in such a case.[7]

Under Delaware's permissive joinder statute, "[a]ll persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences."  Del. R. Civ. P. 20(a).  Such a joinder is proper only "if any question of law or fact common to all defendants will arise in the action."  *Id.*  Moreover, a "defendant need not be interested in . . . defending against all the relief demanded."  *Id.*

The Court finds instructive the case of *Saviour v. Stavropoulous*, No. 15-cv-05362, 2015 WL 6810856 (E.D. Pa. Nov. 5, 2015).  In that case, the plaintiff brought a products liability suit against Bard after one of its inferior vena cava filters fractured and

---

[7] The Supreme Court has instructed that a valid rule promulgated under the Rules Enabling Act is to be applied by the federal courts in diversity actions, *see Hanna v. Plumer*, 380 U.S. 460, 465 (1965), but this instruction applies to cases where diversity jurisdiction clearly exists.  In this case, the Court is asked to determine whether a pre-removal joinder in state court was proper and sufficient to defeat diversity jurisdiction.

migrated in the plaintiff's body.  *Id.* at *1-2.  The plaintiff also alleged medical malpractice claims against the physician who implanted the filter, including that the physician "failed to implement a follow-up plan to monitor, assess, or remove" the filter. *Id.*  Bard removed, seeking severance under Rule 21 of the Federal Rules of Civil Procedure or remand based on the doctrine of fraudulent misjoinder.  *Id.* at *3.  Bard argued that the claims against the implanting physician had no real connection to the claims against it "because the issues concerning the design, manufacture, and labeling of the G2 Filter have nothing to do with [the implanting physician's] alleged interactions with, and medical treatment regarding, the plaintiff."  *Id.* at *6 (quotation marks and citation omitted).  The court concluded that, assuming the doctrine of fraudulent misjoinder applied, the implanting surgeon had not been fraudulently misjoined.  *Id.* at *6-7.  The court found that the plaintiff's claims against Bard and her claims against the implanting physician arose out of the same transaction or occurrence and were likely to involve common questions of fact because the plaintiff alleged "that her injuries were caused by the doctor, the device itself, or a combination of both."  *Id.* at *6 (citation omitted).  The court concluded that it lacked subject matter jurisdiction and remanded the case to state court.  *Id.* at *7.

District court cases in the Third Circuit and in other circuits are in accord.  *See Reuter v. Medtronics, Inc.*, No. 10-3019-WJM, 2010 WL 4628439, at *5-6 (D.N.J. Nov. 5, 2010), *report and recommendation adopted*, 2010 WL 4902662 (D.N.J. Nov. 23, 2010) ("Even assuming fraudulent misjoinder in its most expansive form was accepted in this Circuit (which it clearly is not), it would not apply here.  The claims against [the non-diverse implanting physician defendant] and the other Defendants are intertwined.  All of Plaintiffs' claims arise from the same surgery.  The non-diverse Defendant installed the product manufactured and distributed by the diverse Defendants.  The injury sustained by [Plaintiff] is alleged to result from the same event.  More specifically, Plaintiffs argue that her injury could only be a result of improper implantation, a product defect, or some combination thereof."); *see also Bostic v. Glaxosmithkline, LLC*, No. 15-cv-00084-ART,

2015 WL 8486181, at *1-2 (E.D. Ky. Dec. 9, 2015); *Lopez v. Pfeffer*, No. CV13-03341-NC, 2013 WL 5367723, at *4-5 (N.D. Cal. Sept. 25, 2013); *Williams v. Altman, McGuire, McClellan & Crum, P.S.C.*, No. 12-cv-00131-ART, 2013 WL 28378, at *6 (E.D. Ky. Jan. 2, 2013); *N.C. ex rel. Jones v. Pfizer, Inc.*, No. C-12-00531-WHA, 2012 WL 1029518, at *2-4 (N.D. Cal. Mar. 26, 2012); *Watson v. Gish*, No. C-10-03770-SBA, 2011 WL 2160924, at *3-4 (N.D. Cal. June 1, 2011); *Geffen v. Gen. Elec. Co.*, 575 F. Supp. 2d 865, 871-72 (N.D. Ohio 2008).

The majority of district courts in the Third Circuit have rejected allegations of fraudulent misjoinder.  *See Saviour*, 2015 WL 6810856, at *6-7 (rejecting allegations of fraudulent misjoinder); *In re Plavix*, 2014 WL 4544089, at *4-8 (same); *In re Avandia*, 2014 WL 2011597, at *3-4 (same); *In re Paulsboro Derailment Cases*, No. 13-784-RBK-KMW, 2014 WL 197818, at *3-6 (D.N.J. Jan. 13, 2014) (same); *Belmont Condo. Ass'n, Inc. v. Arrowpoint Capital Corp.*, No. 11-cv-02900-WHW, 2011 WL 6721775, at *7-8 (D.N.J. Dec. 20, 2011) (same); *Reuter*, 2010 WL 4628439, at *5-6 (same); *Kaufman v. Allstate Ins. Co.*, No. 07-cv-06160-MLC, 2010 WL 2674130, at *6-8 (D.N.J. June 30, 2010) (same); *Pa. Emps. Benefit Tr. Fund v. Eli Lilly & Co. Inc.*, No. 07-cv-02057, 2007 WL 2916195, at *6-12 (E.D. Pa. Oct. 5, 2007) (same); *but see In re Fosamax*, 2012 WL 1118780, at *1-6 (finding fraudulent misjoinder); *In re Diet Drugs*, 294 F. Supp. 2d at 678 (same); *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*, No. 98-cv-20478, 1999 WL 554584, at *2-4 (E.D. Pa. July 16, 1999) (same).

The Court concludes that Plaintiffs had a reasonable, non-frivolous basis for joining the nondiverse Defendants.  Plaintiffs' claims center on the Bard Filter implanted in Fraser-Johnson's inferior vena cava.  The Filter was manufactured by Bard.  Fraser-Johnson was a patient of Dr. Bauer and Dr. Heldt, both of whom were affiliated with Christiana Care.  Both physicians allegedly failed to diagnose the Filter's fracture in a timely manner.  Plaintiffs assert the following claims: (1) negligence against Bard; (2) several strict products liability claims against Bard; (3) breach of implied warranty of merchantability against Bard; (4) negligent misrepresentation against Bard; (5) deceptive

trade practices against Bard; and (6) medical negligence against Dr. Bauer, Dr. Heldt, and Christiana Care. *See* Doc. 1077-1 at 6-21, ¶¶ 27-97. Although none of the claims involve both Bard and the nondiverse Defendants, Plaintiffs' allegations establish a relationship between the Defendants. Plaintiffs' medical negligence claim alleges that the nondiverse Defendants negligently failed to properly diagnose the cause of Fraser-Johnson's chest pain in July 2013, which caused her significant harm by prolonging the time period during which she had fragments of the Filter in her body. *Id.* at 19-20, ¶¶ 93-94.

The nondiverse Defendants were properly joined under Delaware's permissive joinder statute. Fraser-Johnson alleges that she was initially harmed by Bard's defective Filter. But this harm was subsequently amplified by the nondiverse Defendants' failure to timely diagnose the initial harm. This is sufficient to allege joint, several, or alternative liability, which satisfies the first part of Delaware's Rule of Civil Procedure 20(a). Plaintiffs' medical negligence claim against the nondiverse Defendants arises out of the "same transaction, occurrence, or series of transactions or occurrences" as Plaintiffs' other claims because the claims all stem from the implantation and subsequent failure of the Filter. This satisfies the second requirement of Rule 20(a); *see also Sequa Corp.*, 1990 WL 123006, at *8 ("As to the requirement that the joined claims arise from the same transaction(s) or occurrence(s), there exists no generalized test, but rather, the decisions reflect a case-by-case approach. . . . As a general matter, the cases apply a liberal approach that has allowed courts to promote judicial economy by permitting reasonably related claims to be tried together.") (citation omitted). To assign liability, a jury must decide how much harm resulted from the defective product and how much resulted from the failure to timely diagnose the problem. This involves common questions of fact, which satisfies the third criterion set forth in Rule 20(a). *See also Sequa Corp.*, 1990 WL 123006, at *8 (permitting permissive joinder so long as "there is but one question of law or fact common to the parties") (citation omitted). With this claim sufficient to support the permissive joinder of the nondiverse Defendants, there is

1    no need to analyze any other claims.  Del. R. Civ. P. 20(a) ("A plaintiff or defendant need

2    not be interested in obtaining or defending against all the relief demanded.").

3        This case is unlike those where fraudulent misjoinder applied.  In *Tapscott*, for

4    example, the claims all involved violation of the same state statute, but differed in

5    virtually every other respect.  The two classes of claims had no facts in common; one

6    involved automobile service contracts, the other retail goods service contracts; and the

7    two classes had no parties in common.  The court concluded that joining the claims

8    against the retail goods class with those against the automobile class was done solely to

9    prevent the retail goods class from being removed to federal court.  Given Plaintiffs'

10   compliance with Delaware Rule of Civil Procedure 20(a), the Court does not find the

11   same situation here.[8]

12        Bard asserts that "Plaintiffs have not cited a single case where the physician

13   defendant did not implant the device that was the subject of product liability claims

14   against the defendant medical device manufacturer, and the claims asserted against the

15   physician defendant allegedly arose years later."  Doc. 1217 at 7.  In support, Bard cites

16   *Stone v. Zimmer*, No. 09-cv-80252, 2009 WL 1809990 (S.D. Fla. June 25, 2009), and

17   *DeGidio v. Centocor, Inc.*, No. 3:09-cv-00721, 2009 WL 1867676 (N.D. Ohio July 8,

18   2009).  Doc. 1217 at 8-10.  Plaintiffs respond with two cases of their own, *Austin v. C.R.*

19   *Bard, Inc.*, No. 15-cv-61316-WPD (S.D. Fla. Aug. 17, 2015) (*see* Doc. 1354-1 at 2-7),

20   and *Hagensicker v. Boston Scientific Corp.*, No. 12-cv-05018-SW-RED, 2012 WL

21   836804 (W.D. Mo. Mar. 12, 2012).  Doc. 1354 at 3-5.  These cases reach opposition

22   conclusions on similar facts, illustrating that this case is closer than the typical case

23

24        [8] Bard's Master Answer also contains a number of affirmative defenses which
25 suggest that Dr. Schmetterer is a proper party in this case.  *See* Doc. 366 at 44, ¶ 2 (negligence of others as sole proximate cause); ¶ 6 (damages caused by others); 45, ¶ 11
26 (others caused or contributed damages); 46, ¶ 18 (physicians acted as sophisticated purchasers); ¶ 19 (independent knowledge of risks by others was intervening and
27 superseding cause); 47, ¶ 25 (contributory or comparative negligence); 51, ¶ 52 (failure to join necessary parties).  Moreover, in a footnote, Plaintiffs request that Bard "be
28 judicially estopped from asserting any third-party defense or empty chair defense that the doctors contributed to Bianca Fraser-Johnson's injuries."  Doc. 1077 at 3 n.1.  Because the Court finds that remand is appropriate, the Court will deny Plaintiffs' request.

1   involving a diverse manufacturer joined with an implanting doctor.    The Court finds,

2   however, that the allegations of the complaint satisfy Delaware joinder requirements for

3   the reason set forth above.

4          Even if the Court was not completely satisfied that the nondiverse Defendants

5   were properly joined in the first instance, finding fraudulent misjoinder would be

6   inappropriate.  First, the Court could remand so that Plaintiffs could amend his complaint.

7   This would be consistent with Delaware law.  *Cf. Choupak v. Rivkin*, No. 11-cv-1281-

8   RGA-CJB, 2012 WL 2365903, at *14 (D. Del. June 21, 2012) (denying leave to amend

9   notice of removal based on fraudulent joinder where deficiency could not be remedied by

10  amendment).   Second, where it is unclear whether the nondiverse Defendants were

11  properly joined, remand can still be appropriate to give effect to the strong presumption

12  against removal, which requires that all doubts be resolved against the exercise of federal

13  court jurisdiction.  *Batoff*, 977 F.2d at 851 (citations omitted); *see* 28 U.S.C. § 1447(c).

14         Finally, the Court must consider the proper remedy.  Bard asks the Court to sever

15  and remand Plaintiffs' claims against the nondiverse Defendants under Federal Rule of

16  Civil Procedure 21.  Doc. 1217 at 11-14.  Courts can sever and remand claims against

17  non-diverse defendants when the test for permissive joinder has not been satisfied, i.e.,

18  when fraudulent misjoinder has occurred.  *See McKinney v. Prosecutor's Office*, No. 13-

19  cv-2553-KM-MCA, 2014 WL 2574414, at *16-17 (D.N.J. June 4, 2014) (severing

20  misjoined claims); *see also Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997) ("If

21  the test for permissive joinder is not satisfied, a court, in its discretion, may sever the

22  misjoined parties, so long as no substantial right will be prejudiced by the severance.")

23  (citation omitted).  A court's use of Federal Rule of Civil Procedure 21 presumes that the

24  court has subject matter jurisdiction over the claims.

25         As Bard points out, some district courts have opted to sever and remand claims

26  against a nondiverse party to perfect diversity jurisdiction.  Doc. 1217 at 11-12 (citing

27  *Joseph v. Baxter Int'l Inc.*, 614 F. Supp. 2d 868 (N.D. Ohio 2009); additional citations

28  omitted).   The Court cannot conclude that such an approach is proper where no

fraudulent misjoinder has been found and all doubts are to be resolved against the exercise of federal court jurisdiction.  *Batoff*, 977 F.2d at 851; *see* 28 U.S.C. § 1447(c). The proper remedy is remand to the New Castle County Superior Court.

### 4.    Attorneys' Fees.

Plaintiffs seek to recover attorneys' fees.  Docs. 1077-2 at 1; 1354 at 5.  "The Supreme Court has held that fees under § 1447(c) may be awarded when the removing party lacks 'an objectively reasonable basis for seeking removal.'"  *First Am. Title Ins. Corp. v. JP Morgan Chase & Co.*, 384 F. App'x 64, 68 (3d Cir. 2010) (unpublished) (citing *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005)).  The Court cannot conclude that Bard lacked an objectively reasonable basis for seeking removal.  Although the Third Circuit has not yet adopted the doctrine of fraudulent misjoinder, neither has it rejected the doctrine.  The Court finds that Bard made reasonable, good faith arguments in support of its removal, and will not award fees.  *See In re Paulsboro Derailment Cases*, 2014 WL 197818, at *7.

### B.    Bard's Motion to Sever and Remand.

Prior to removal, Bard filed a motion to sever and remand Plaintiffs' claims against the nondiverse Defendants.  *See* D. Del. Docs. 5; 6.  Because there is no complete diversity between the parties, the Court lacks subject matter jurisdiction to resolve this motion.

**IT IS ORDERED:**

1.     Plaintiff's motion to remand (Doc. 1077) is **granted**.

2.     The Clerk of the Court shall remand this case to the New Castle County Superior Court.

Dated this 23rd day of May, 2016.

_____
David G. Campbell
United States District Judge